```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        WESTERN DIVISION
```

Carlotta Cook,                )
                              )
          Plaintiff,          )   Case No. 1:08-CV-167
                              )
    vs.                       )
                              )
Liquid Container, Inc.,       )
et al.,                       )
                              )
          Defendants.         )

O R D E R

This matter is before the Court on the motion for summary judgment filed by Defendants Liquid Container, LP and Jeffrey Safran (Doc. No. 16). For the reasons set forth below, Defendants' motion is well-taken and is **GRANTED** as to Plaintiff's federal and state law claims for age discrimination and retaliation. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for slander per se, slander per quod, and negligent and intentional infliction of emotional distress. These claims are **DISMISSED WITHOUT PREJUDICE**. Therefore, Defendants' motion for summary judgment as to those claims is **MOOT**.

I. Background

Plaintiff Carlotta Cook was employed by Defendant Liquid Container, LP from February 1989 to October 1, 2009, when she voluntarily resigned her employment. Amended Complaint ¶ 8. Plaintiff's last position with Liquid Container was Logistics Manager at the Mason, Ohio facility. Id. Her supervisor at the

relevant times in this case was the plant manager, Defendant Jeffrey Safran.  Plaintiff was age 59 at the time of her resignation.  Plaintiff consistently received good performance evaluations as Logistics Manager,

Liquid Container is in the business of manufacturing and shipping rigid plastic bottles.  One of the byproducts of making plastic bottles is "regrind" - bottles that do not meet specifications as well as excess material that is cut from a bottle during production.  If possible, regrind is reused in the production process.  Regrind was stored throughout the Mason facility and, as Logistics Manager, one of Plaintiff's responsibilities was to find places to store it until it was reused or disposed of.  During 2007, the amount or volume of regrind at the facility increased substantially, apparently because Liquid Container had begun a new production run for a client and there were problems making the bottles to specifications.  As a result, however, storing regrind in the facility became a problem.

On July 26, 2007, during an inspection of the facility, an OSHA inspector cited Liquid Container for a "serious" violation because a pallet of materials was blocking an exit. Liquid Container was initially fined $500 for the violation, but this was later reduced to $300.  The violation itself was quickly remedied by moving the pallet out of the way.  This improper placement of the pallet fell within Plaintiff's area of responsibility, but she was not disciplined for this incident.

Safran Dep. at 64. Instead, Safran asked Plaintiff to devise and implement a system to prevent this type of incident from reoccurring. Id.

On July 30, 2007, Plaintiff submitted her first resignation to Liquid Container. In her deposition, Plaintiff said that she tendered her resignation because Safran was angry about the OSHA inspection and was pressing her to find out who the informant was. Plaint. Dep. at 44. Safran, however, convinced Plaintiff to withdraw her resignation after he explained that she was a valuable employee and that the regrind issues could be resolved. Id. at 45.

On September 6, 2007, Liquid Container President and CEO David Randall visited the Mason facility and held a group meeting with its management staff. During the meeting, Plaintiff expressed concern with the both the amount of regrind at the facility and the lack of space to store it. Plaint. Dep. at 39. According to Plaintiff, Randall seemed surprised and displeased with her report on the volume of regrind. Randall then gave Safran a fairly short deadline - about six weeks - to reduce the regrind in the plant.

Plaintiff claims that between July 30, 2007 and October 1, 2007, Safran continually hectored her about her inability to handle the regrind situation. Plaint. Dep. at 47. Plaintiff testified that Safran singled her out in staff meetings and blamed her for additional labor costs because she had spoken up

to Randall about the regrind problem.  Id.  Moreover, at a special staff meeting Safran called early on the morning of September 30, 2007 to address the regrind situation, Safran publicly blamed Plaintiff for speaking up to Randall and told the others that she was the reason they all had to be there so early.  Id.

Plaintiff submitted her second resignation on October 1, 2007.  Plaintiff testified that she resigned because conditions at the plant had not improved and because of Safran's alleged ill-treatment of her subsequent to Randall's visit.  Plaintiff also said that her daily interactions with Safran were making her physically ill and that she could not continue on.  Plaint. Dep. at 64-65.  Plaintiff met again with Safran after she tendered this resignation and she admitted that the subject of her age did not come up during this meeting and that she did not state that she was resigning because of age discrimination.  Id. at 65-66.  Plaintiff also testified that Safran never specifically mentioned her age but would often criticize her ideas or suggestions as "old Mason":

> Q. Did he [Safran] make reference to your age in any way, shape, or form, as to the reason the employees were there for that meeting?
> . . .
>
> A. Here, again, the meeting was to be established on how we were going to get all the rework.  And different opinions were offered on how we could get this done.  When suggestions would be offered by me in regards to something I came across, he would again say, I've heard all this before, I need something new, I'm tired of the

4

old Mason.

Id. at 56.  Plaintiff testified that after Safran used this term "a number of times" she came to believe that he was referring to her age.  Id. at 57.

Plaintiff filed a complaint of age discrimination and retaliation with the EEOC on December 8, 2007 and received a right to sue letter on December 20, 2007.  On March 11, 2008, Plaintiff filed a complaint (Doc. No. 1) which asserted state law claims for age discrimination and retaliation, slander per se, slander per quod, wrongful discharge, and negligent and intentional infliction of emotional distress.  Defendants filed the instant motion for summary judgment on April 15, 2009.  After briefing was concluded on the motion, the Court issued an order (Doc. No. 24) raising the issue of subject matter jurisdiction. In short, the Court observed that the complaint asserted only state law causes of action and that diversity jurisdiction had not been properly established because the complaint only contained allegations concerning the parties' state of residence. The Court, therefore, directed Plaintiff to file an amended complaint which established subject matter jurisdiction.

Plaintiff filed an amended complaint (Doc. No. 25) on July 7, 2009 which added federal causes of action for age discrimination and retaliation pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.  Additionally, the amended complaint dropped the claim for wrongful discharge.

Finally, the amended complaint added allegations which establish that Plaintiff and Defendant Safran are both citizens of the State of Ohio. Amended Complaint ¶¶ 4, 6. Defendants filed an answer to the amended complaint on July 20, 2009.

The amended complaint establishes that the Court now has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff has added claims arising under federal law. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The Court, however, does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant Safran are both citizens of the State of Ohio. Caudill v. North Am. Media Corp., 200 F.3d 914, 916 (6th Cir. 2000)("Section 1332's congressionally conferred diversity jurisdiction has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party.").

Finally, the Court observes that Defendants did not renew their motion for summary judgment as to the amended complaint. The parties appear to assume, as the Court does now, that since the purpose of filing the amended complaint was to cure defective jurisdictional allegations, their same arguments for and against summary judgment apply and/or would simply be incorporated by reference as to the amended complaint. Accordingly, the Court concludes that a formal renewal of the motion for summary judgment is not necessary under these circumstances.

II. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).  The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

The fact that the weight of the evidence favors the

moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for

that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

#### A. Age Discrimination and Retaliation

As indicated, Plaintiff now asserts claims for age discrimination pursuant to the federal ADEA and the Ohio Civil Rights Act. The federal and state discrimination statutes employ the same evidentiary standards and, consequently, may be analyzed together. Peters v. Lincoln Elec. Co., 285 F.3d 456, 469 (6th Cir. 2002). The federal employment discrimination statutes do not impose liability on individuals. Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997). However, Ohio law provides that a defendant who otherwise qualifies as a supervisor under the Ohio Civil Rights Act may be held individually liable for his own acts of discrimination. Genaro v. Central Trans., Inc., 703 N.E.2d 782, 785 (Ohio 1999). Therefore, in this case, Defendant Safran cannot be held individually liable under federal law, but could be held liable individually under Ohio law for his own discriminatory acts.

A plaintiff establishes a prima facie case of age discrimination by showing: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the job lost or not gained; and 4) that a person substantially younger than the plaintiff replaced or was selected over her, or that the position remained open while the employer sought other applicants. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 n.12 (6th Cir. 1996); Cooley v. Carmike

Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994).  A plaintiff may also satisfy the fourth element by showing that the defendant treated similarly-situated non-protected persons more favorably than the plaintiff.  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994).

If the employer meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual.  Id.  However, the burden of persuasion remains with the plaintiff at all times.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways:  1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the action taken.  Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997).  When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination.  Id.  In the second situation, the

factual basis for the discharge is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail. Id. at 346-47.

Of course, a plaintiff may also establish a case of age discrimination through direct evidence. Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Id. When a plaintiff presents direct evidence of discrimination, the burden shifts to the employer to prove that it would have terminated the plaintiff even if it had not been motivated by impermissible discrimination. Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). In Johnson, the Court explained that "direct evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against a protected group." 319 F.3d at 865. Slurs or statements that suggest that the decision-maker relied on impermissible stereotypes to assess an employee's ability to perform can constitute direct evidence. Erwin v. Potter, 79 Fed. Appx. 893, 897 (6th Cir. 2003). Additionally, however, the direct evidence must establish not only that the employer was predisposed to discriminate on the basis of a protected characteristic, but also that the employer

12

in fact acted on that predisposition. DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004). Even in cases involving direct evidence of discrimination, the plaintiff still must demonstrate that there was an adverse employment action. Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 n.1 (6th Cir. 2002).

In this case, Defendants argue that summary judgment should be granted in their favor because Plaintiff's voluntary resignation is insufficient to establish an adverse employment action because her working conditions were not severe enough to establish a constructive discharge. The Court agrees.

A constructive discharge is an adverse employment action in employment discrimination law. A constructive discharge occurs when working conditions are so difficult or intolerable that a reasonable person in the plaintiff's shoes would have felt compelled to resign. Smith v. Henderson, 376 F.3d 529, 533-34 (6th Cir. 2004). The employer's conduct must be such that a reasonable factfinder could conclude that it deliberately created intolerable working conditions with the intent to force the employee to quit. Goldmeier v. Allstate Ins. Co., 337 F.3d 629, 635 (6th Cir. 2003). A constructive discharge is not established, however, where the claim involves the manner in which the plaintiff was supervised or her performance criticized, even if the criticism was unfair. Smith, 376 F.3d at 534.

In this case, it is clear that conflict between Plaintiff and Safran concerned her inability to remedy or alleviate the regrind problem. Therefore, Plaintiff was not constructively discharged even if Safran's criticism of her performance was harsh or unfair. Moreover, there is no evidence that Safran purposefully made Plaintiff's working conditions difficult with the intent to cause her to resign. In fact, the record demonstrates that Safran believed that Plaintiff was a valuable employee and that he asked her to stay with Liquid Container after both of her resignations. Plaint. Dep. at 45; 71-72. There is no evidence that Safran singled out Plaintiff for mistreatment because of her age, such as evidence that he treated substantially younger managers more politely in critiquing their performance. In context, Safran's references to Plaintiff as "old Mason" was about the need for new or fresh ideas, and not her age. At best, this comment is only ambiguously about Plaintiff's age and was not used with enough frequency to establish a hostile work environment that would have compelled a reasonable person to resign. See, e.g., Lindsey v. Whirlpool Corp., 295 Fed. Appx. 758, 771-72 (6th Cir. 2008)("Plaintiff's complaint focuses on the fact that she was teased, and generally disliked, by several of her co-workers. However, this teasing occurred in discrete and isolated incidents, and was, by no means, the kind of severe and pervasive

racial harassment that would cause a reasonable employee to quit.").

Because the record establishes that Plaintiff was not constructively discharged, she cannot prevail on her claims for age discrimination.  Accordingly, Defendants' motion for summary judgment on Plaintiff's age discrimination claims is well-taken and is **GRANTED.**  Those claims are **DISMISSED WITH PREJUDICE.**

Plaintiff's retaliation claims also fail because of the lack of an adverse employment action.  See Harrison v. Metropolitan Gov't of Nashville, 80 F.3d 1107, 1118 (6th Cir. 1996), overruled on other grounds as recognized by Jackson v. Quanex Corp., 191 F.3d 647, 667 (6th Cir. 1999) (setting forth elements of prima facie case of retaliation).  Plaintiff's retaliation claims fail for the additional reason that she claims that she was retaliated against for complaining about possible OSHA violations created by the regrind backlog and not for any reason relating to employment discrimination.  See Doc. No. 25, at 21 (arguing that "Safron [sic] retaliated against Cook for advising LC's CEO that the Mason Plant had enormous storage and safety problems."); McElroy v. Philips Medical Sys. North Am., Inc., 127 Fed. Appx. 161, 171 (6th Cir. 2005) ("The ADEA and ADA, like Title VII, prohibit retaliation against an individual because he 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,' hearing, or

15

litigation 'under this chapter.'")(citing 29 U.S.C. § 623(d) and 42 U.S.C. § 12203(a)). Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claims is well-taken and is **GRANTED**. Those claims are **DISMISSED WITH PREJUDICE.**

### B. Remaining State Law Claims

Plaintiff also asserts state law claims against Defendants for slander per se, slander per quod, and negligent and intentional infliction of emotional distress. Having granted Defendants' motion for summary judgment on Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. See Hankins v. The Gap, Inc., 84 F.3d 797, 802-03 (6th Cir. 1996). Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE.** Therefore, Defendants' motion for summary judgment as to these claims is **MOOT.**


### Conclusion

In conclusion, for the reasons stated, Defendants' motion for summary judgment is **GRANTED IN PART AND MOOT IN PART.** The motion is well-taken and is **GRANTED** as to Plaintiff's federal and state claims for age discrimination and retaliation. Those claims are **DISMISSED WITH PREJUDICE.** The motion is **MOOT** as to Plaintiff's state law claims for slander per se, slander per quod, and negligent and intentional infliction of emotional distress. Those claims are **DISMISSED WITHOUT PREJUDICE. THIS**

16

**CASE IS CLOSED.**

        **IT IS SO ORDERED**

Date November 2, 2009          s/Sandra S. Beckwith
                                            Sandra S. Beckwith
                              Senior United States District Judge